**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ERIKA LOOFE,**                                                     **CASE NO.**

     **Plaintiff,**

**v.**

**BOARD OF TRUSTEES, FLORIDA**
**POLYTECHNIC UNIVERSITY,**

     **Defendant.**

_____/

## COMPLAINT

Plaintiff, ERICKA LOOFE, hereby sues Defendant, BOARD OF TRUSTEES, FLORIDA POLYTECHNIC UNIVERSITY, and alleges:

## NATURE OF THE ACTION

1.     This is an action brought under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq. and under 42 U.S.C. §1981. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction) and under the Age Discrimination in Employment Act, (ADEA), codified at 29 U.S.C. §621 et seq. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

2.     This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

## THE PARTIES

3.     At all times pertinent hereto, Plaintiff, ERICKA LOOFE, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her age and gender.

4.     At all times pertinent hereto, Defendant, BOARD OF TRUSTEES, FLORIDA POLYTECHNIC UNIVERSITY, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.     Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6.     Plaintiff, a female in her early 50s, began her employment with Defendant on or about December 20, 2020, and held the position of Admissions Counselor at the time of her constructive discharge on December 10, 2024.

7.     Plaintiff was a loyal and dedicated employee who constantly met or exceeded her performance evaluations. Throughout Plaintiff's employment, she

2

was never issued a written warning, placed on a performance improvement plan, or counseled regarding any alleged performance deficiencies.

8. Despite her stellar work performance during her employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her age and gender.

9. The disparate treatment and retaliation came at the hands of specifically but not limited to Former Interim Vice President (VP) of Enrollment David Poole, a male approximately in his late 50s, Former Director of Admissions, Lori Welch, a female approximately in her late 30s, Admissions Counselor Savannah Taylor, a female approximately in her late 20s, VP of Enrollment Dr. Andy Oguntola, a male in his late 30s, and Associate Director of Human Resources (HR) Eunice Alberson, a female approximately in her mid-30s.

10. Throughout her employment, Plaintiff was subjected to less favorable treatment than similarly situated male and/or younger employees, including but not limited to, repeatedly being denied opportunities for professional growth and advancement, exclusion from meetings, and routine office communications, while younger staff members were routinely included, treated more favorably, and credited for performing the same or even lesser work.

3

11.     Beginning in or around Spring 2023, Taylor repeatedly displayed hostility toward older individuals and specifically toward Plaintiff, including stating on multiple occasions, "I hate old people," referring to students' parents as "stupid," rolling her eyes at Plaintiff, mocking her, pretending not to hear her, and excluding her from meetings. These comments and actions were frequent, severe, and directed at Plaintiff because of her age, thereby contributing to a hostile work environment.

12.     In November 2023, Welch was hired as Director of Admissions. Welch was aware of Taylor's poor communication and lack of professionalism in the office and within her role because she witnessed it and was the subject of Taylor's inappropriate behavior on multiple occasions. Furthermore, Plaintiff reported Taylor's repeated disrespectful language and actions to Welch on two separate occasions, in or around May 2024 and in or around July 2024. On both occasions, Plaintiff approached Welch's office and requested to speak with her.

13.     During the first meeting in or around May 2024, Plaintiff informed Welch that Taylor had become offensive in her comments, tone, and behavior. Welch seemed receptive and thanked Plaintiff for her feedback. However, Welch took no corrective action toward Taylor. On the contrary, Welch clearly demonstrated favor toward Taylor by delegating significant responsibilities to her and blatantly overlooking Taylor's offensive behavior and Plaintiff's complaints

4

about Taylor's behavior toward her. Defendant, through Welch, had actual notice of discriminatory and hostile conduct and failed to take prompt remedial action.

14. After approximately eight weeks had passed and Plaintiff had observed no change in Taylor's behavior, Plaintiff again spoke with Welch. In this second meeting, Plaintiff sought clarification from Welch regarding Taylor's apparent authority to assign tasks and direct Plaintiff's work. Welch then assured Plaintiff that there had been no changes in Taylor's role and that Taylor held no authority over Plaintiff. Welch again thanked Plaintiff for her feedback. However, there were still no changes in Taylor's behavior and no meaningful corrective action was taken against Taylor. At no time between Welch's hire in November 2023 and her resignation in September 2024 did she make any attempt to address or mediate the issues with Taylor that Plaintiff reported to her. Defendant's continued inaction further ratified and perpetuated the discriminatory conduct.

15. Shortly after Welch's hire, Plaintiff's meaningful and visible responsibilities were removed and reassigned to younger employees. This reassignment of core duties materially altered the terms and conditions of Plaintiff's employment and diminished her role within the organization. By way of example, Plaintiff had been responsible for preparing and overseeing Decision Letters and for Florida Residency Application Reviews since 2022, but in or around March 2024, these responsibilities were reassigned to younger

5

Administrative Assistants in their mid-20s. Additionally, between 2021 and 2023, Plaintiff held prominent roles at major admissions events, including delivering welcome remarks, moderating panels, and speaking publicly, but in or around Spring 2024, her assignments at these events were reduced to holding doors and staffing checkpoints, while younger Admissions Counselors, such as Taylor, Diego Arriaga, a male in his late 20s, Chris Moody, a male in his late 30s, and Destiny Peterson, a female in her mid-20s, were given visible speaking and leadership roles. This reassignment reflects a pattern of favoring younger and/or male employees for prestigious and career-advancing opportunities.

16.    Additionally, beginning in or around Fall 2023, Welch began to systematically exclude Plaintiff from meetings and planning sessions directly related to her job duties and territory, including Open House planning meetings, Game Expo planning meetings, Admitted Student Day planning meetings, travel planning meetings, and general admissions strategy and update meetings. These meetings were attended by younger employees, including Taylor and other counselors in their 20s and 30s, while Plaintiff, despite her seniority and experience, was omitted. These meetings were integral to Plaintiff's job duties and responsibilities, and Plaintiff's exclusion hindered her ability to perform her role effectively and limited her professional visibility and advancement opportunities.

6

17. In June 2024, Poole was hired as an Interim VP of Enrollment. However, Poole was working remotely from Virginia and did not make frequent visits to the office. From the onset of his employment, Poole displayed disparate treatment towards Plaintiff by being dismissive and non-responsive to her communications. Poole's conduct undermined Plaintiff's ability to perform essential job functions and created obstacles not imposed on similarly situated younger employees. By way of example, Poole and Welch both increasingly ignored Plaintiff's requests for approval to publish time-sensitive communications, including deadline reminders, invitations, and important admissions updates. Poole frequently failed to attend scheduled meetings and ignored emails seeking required approval. This conduct delayed communications, harmed Plaintiff's professional reputation, and negatively impacted her relationships with students, families, vendors, and community partners. In contrast, younger employees routinely received timely responses, approvals, and support.

18. In or around September 2024, Plaintiff participated in a virtual meeting with Poole and the entire admissions team. During the meeting, Poole opened the discussion for questions and a few attendees, including Plaintiff, raised their virtual hands to indicate they had questions. Poole then allowed each of the other employees, including but not limited to Arriaga, Peterson, and Moody, to have a turn speaking but never called on Plaintiff. When the meeting was about to

end, Plaintiff attempted to ask her question, but Poole interrupted her and rudely stated "No, Ericka! This meeting is over. We can speak later offline if you still have questions." This public dismissal of Plaintiff, in contrast to the treatment of younger colleagues, further evidences disparate treatment. After the meeting, Plaintiff met with Poole in his office and asked him directly if he had any issues with her. Poole then bluntly stated, "Yes, you ask too many questions." Plaintiff then asserted that she would not need to ask so many questions if she were included in the same meetings and provided the same information as her colleagues. Thereafter, Poole gave Plaintiff the "silent treatment" and further reduced communication with her. Such conduct materially impaired Plaintiff's ability to perform her job and constitutes adverse treatment.

19.    Furthermore, Welch and Poole repeatedly denied Plaintiff's requests for professional growth and development opportunities, despite professional development attendance being required and documented in annual reviews. Plaintiff repeatedly requested approval to attend larger National Association for College Admission Counseling (NACAC) conferences and similar professional events but was consistently denied such opportunities. In contrast, Welch and Poole routinely selected and permitted younger or male employees to attend multiple professional conferences, while Plaintiff was allowed to attend only a single small, one-day vendor conference during her four-year tenure. By way of

8

example, Arriaga attended the NACAC conference in 2024, Taylor attended two Civsa conferences in 2024, and Moody attended a Civsa conference in 2024. The denial of these opportunities deprived Plaintiff of career advancement, professional development, and networking opportunities routinely afforded to younger and/or male employees.

20.    Plaintiff continued to endure age-based disdain, gossip, and a lack of basic professional respect from Taylor throughout 2024, which contributed to a hostile and demeaning work environment based on age. On December 5, 2024, Plaintiff asked Taylor a benign work-related question. Initially, Taylor pretended not to hear Plaintiff, and when Plaintiff repeated her question, Taylor rolled her eyes and loudly responded, "What, Ericka?" in a disrespectful tone that Plaintiff contends was inappropriate for the workplace. Plaintiff then advised Taylor that such conduct was inappropriate and requested professional communication consistent with workplace standards. Taylor briefly left her workstation following this exchange, after which Plaintiff resumed her work, believing the matter had been resolved through appropriate professional dialogue.

21.    The following day, December 6, 2024, Plaintiff was called into the office of newly hired Oguntola. He informed Plaintiff that Taylor had called him crying and upset and stated that he wanted to understand what had occurred. Plaintiff described the incident and the circumstances surrounding her interaction

9

with Taylor and apologized for Oguntola's involvement in the matter. Oguntola seemed understanding of the situation and Plaintiff continued with her workday as usual. Plaintiff reasonably believed the matter had been resolved and that no disciplinary action would be taken.

22.    Unbeknownst to Plaintiff, the matter was then escalated to Alberson in HR. Later, on December 10, 2024, Plaintiff was again summoned to Oguntola's office, where Alberson was present. Without investigation, warning, or opportunity to respond to allegations, Plaintiff was given an ultimatum: immediate termination or resignation effective immediately. Defendant failed to conduct any meaningful investigation, denied Plaintiff an opportunity to respond, and imposed an immediate adverse employment action under circumstances suggesting pretext. Plaintiff was blindsided by her termination and was provided no legitimate explanation for her separation other than a reference to Florida being a "right-to-work state," despite the absence of any documented performance issues. Plaintiff elected resignation under duress on December 10, 2024. A reasonable person in Plaintiff's position would have felt compelled to resign under these circumstances, constituting a constructive discharge.

23.    At the time of her constructive discharge, Plaintiff was actively performing her job duties at a high level, including planning spring travel, organizing and spearheading the organization's sponsorship of the State Science

10

and Engineering Fair, and preparing for a scheduled meeting with Polk County Schools and the VP to discuss a partnership aimed at increasing brand awareness and applications. This demonstrates that Defendant's decision was not based on performance deficiencies.

24.     Following Plaintiff's constructive discharge, Defendant replaced her with a substantially younger male employee, Aaron Belt, a male in his early-to-mid 20s, who was less qualified than Plaintiff. Belt's prior experience consisted of approximately one year as a customer service representative at a Toyota dealership. He had no comparable admissions or higher education experience, while Plaintiff possessed four years of admissions experience with Defendant, institutional knowledge, and vendor relationships, as well as having established community partnerships and demonstrated success in high-level initiatives. At the time of his hire, Belt was being trained by a substantially younger female employee Katherine Stanford, a female in her early-to-mid 20s, both of whom were newly hired and possessed less experience and fewer qualifications than Plaintiff at the time of her separation. This replacement supports a prima facie inference of both age and gender discrimination. The disparity in qualifications further supports an inference that Defendant's stated reasons for Plaintiff's separation were pretextual.

25. Furthermore, the temporal proximity between Plaintiff's assertion of professional boundaries to Taylor and her constructive discharge supports an inference that Plaintiff's separation was motivated, at least in part, by discriminatory animus based on age and gender.

26. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## <u>SEX DISCRIMINATION</u>

27. Paragraphs 1 through 26 are re-alleged and incorporated herein by reference.

28. This is an action against Defendant for discrimination based upon sex brought under 42 U.S.C. §2000e et seq.

29. Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of Defendant who are male and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's sex.

30. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

31.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

32.    Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

33.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a sex-based nature and in violation of the laws set forth herein.

34.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

35.    The events set forth herein led, at least in part, to Plaintiff's termination on contrived allegations.

36.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender in violation of 42 U.S.C. §2000e et seq..

37.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and

future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive relief and punitive damages.

## COUNT II
## AGE DISCRIMINATION

38.    Paragraphs 1 through 26 are re-alleged and incorporated herein by reference.

39.    This is an action against Defendant for age-based discrimination brought under 29 U.S.C. §621 et seq.

40.    Plaintiff has been the victim of discrimination on the basis of Plaintiff's age in that Plaintiff was treated differently than similarly situated younger employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of her age.

41.    Defendant failed to hire, discharged, or otherwise discriminated against Plaintiff with respect to Plaintiff's compensation, terms, conditions, or privileges of employment because of, at least in part, Plaintiff's age.

42.    Alternatively, Defendant deprived attempted to deprive Plaintiff of employment opportunities and/or took actions which adversely affected Plaintiff's

14

status as an employee in that Defendant limited, segregated, or classified Plaintiff or reduced Plaintiff's wages.

43.   Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

44.   Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

45.   Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

46.   In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an age-based nature and in violation of the laws set forth herein.

47.   The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

48.   Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon age.

49.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive relief, punitive damages and liquidated damages where appropriate

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 7th day of May 2026.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF